UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BOBBY BEAL                                    CIVIL ACTION

VERSUS                                        NO: 08-318

LEXINGTON INSURANCE COMPANY                   SECTION: R


**ORDER AND REASONS**

Before the Court is plaintiff Bobby Beal's Motion to Remand, R. Doc. 18, and the magistrate judge's Report and Recommendation recommending dismissal with prejudice, R. Doc. 27. The Court now rules as follows.

**I.  BACKGROUND**

On August 29, 2007 plaintiff Bobby Beal and four others filed an action in the Orleans Parish Civil District Court against their homeowners insurer, defendant Lexington Insurance Company. The plaintiffs alleged that their property had been "severely damaged, destroyed or otherwise rendered uninhabitable"

by Hurricanes Katrina and Rita and that Lexington had failed to compensate them for the losses as provided in their homeowners insurance policies. Butler Compl., Civ. No. 07-7384, R. Doc. 1-3 at ¶¶ 5-9. They sought compensation for the cost of repairing damage to the dwelling and other structures on the property; for the cost of replacing the dwelling's damaged contents; for loss of use of the property; and for additional living expenses incurred while the property was uninhabitable. They also sought attorneys fees, costs, and bad faith penalties under LA. REV. STAT. §§ 22:1220 and 22:658.[1] *Id.* at ¶¶ 20-29. On October 5, 2007, Lexington removed the action to this Court pursuant to 28 U.S.C. §§ 1332 and 1441. Notice of Removal, Civ. No. 07-7384, R. Doc. 1-1 at 2. The plaintiffs did not file a motion to remand or otherwise indicate that they believed the Court lacked jurisdiction.

Lexington filed a motion to sever the different plaintiffs' claims on November 9, 2007, which the Court granted on December 12, 2007. Order, Civ. No. 07-7384, R. Doc. 9. On August 18, 2008, Lexington served written discovery on plaintiff and sought an inspection of the property and plaintiff's deposition. R. Doc. 11-3. On September 29, 2008, after plaintiff failed to respond to the discovery requests, Lexington filed a motion to

---

[1] These statutes were recently renumbered as LA. REV. STAT. §§ 22:1973 and 22:1892. The Court will refer to the provisions by their former numbers for the sake of clarity.

compel responses and for sanctions. R. Doc. 11-1. Plaintiff's counsel acknowledged the delay in his memorandum in opposition, but argued that it was excusable in light of Katrina-related "impediments to rapid and instant communication" that he claimed were still affecting his ability to communicate with clients three years after the storm. R. Doc. 13. Counsel stated that he was in communication with his client and that he "should have the requests completed within (15) days." *Id.*

The magistrate judge granted the motion to compel but denied sanctions in an order dated October 15, 2008. Plaintiff's counsel was specifically instructed to initiate contact with Lexington's counsel and plaintiff was given specific deadlines with respect to the requested discovery. The magistrate judge also cautioned plaintiff that her "continued failure ... to respond to discovery may lead to a recommendation that [her] action be dismissed with prejudice for failure to prosecute." R. Doc. 14.

One month later, on November 7, 2008, Lexington filed another motion for sanctions, alleging that its counsel "had not heard from Plaintiff's counsel at all since the Court entered [the October 15] order, nor [had it] ever been served with any discovery responses (which were due no later than November 5)." R. Doc. 15. Lexington asked for attorneys fees and costs, an order holding plaintiff in contempt of court, and a

recommendation that plaintiff's action be dismissed. Plaintiff did not file a memorandum in opposition the motion. Instead, that same day, plaintiff mailed Lexington brief responses to its interrogatories and requests for production. *See* R. Doc. 20-3. The interrogatories were not answered under oath, however, and one-half of the responses stated merely that "Plaintiff will supplement the response in fifteen days." *Id.*

The magistrate judge ruled on Lexington's second motion for sanctions on December 3, 2008. She found that plaintiff had not complied with the earlier discovery order and that plaintiff did not file an opposition to the motion for sanctions. R. Doc. 17. While the magistrate found that a recommendation of dismissal would be premature, she ordered plaintiff to comply with the October 15 discovery order and awarded Lexington $500 in reasonable fees and costs. *Id.* The order then stated, in bold typeface: "If [plaintiff] fails to comply with this order, <u>it will be</u> recommended that this action be dismissed with prejudice for failure to prosecute and for violation of the Court's orders." *Id.* (emphasis in original).

Two days later, on December 5, 2008, plaintiff filed the present Motion to Remand, alleging that the Court did not have jurisdiction over her claims because the amount in controversy was not met. R. Doc. 18. On December 16, 2008, Lexington filed a memorandum in opposition to the Motion to Remand, R. Doc. 19,

4

and a third motion for sanctions, R. Doc. 20. Lexington "certifie[d] that to date, the Plaintiff has not complied with any of the things he was ordered to do in the October 15, 2008 Order or the December 3, 2008 Order," and requested a recommendation of dismissal. R. Doc. 20-2 at 2. In opposition to the motion for sanctions, plaintiff argued simply that the Court lacked subject matter jurisdiction over her claims and that dismissal was therefore inappropriate. *See* R. Doc. 22. She did not challenge Lexington's characterization of her actions or explain her failure to comply with the Court's orders. After reviewing the briefs, the record, and the applicable case law, the magistrate recommended that plaintiff's claims be dismissed with prejudice. *See* R. Doc. 27. In objecting to the magistrate's report, plaintiff simply repeats her jurisdictional argument. *See* R. Doc. 30.

**II. DISPOSITIONAL ORDER**

It is necessary to take up a threshold sequencing issue before addressing the two matters at bar. Lexington appears to argue that this Court has the power to dismiss plaintiff's claims for failure to prosecute and for failure to comply with the Court's orders irrespective of whether the amount in controversy is met. Plaintiff counters that the Court must first determine whether there is subject matter jurisdiction and, if there is

5

not, must remand the action to state court rather than dismiss it.

It is true that a federal court without subject matter jurisdiction is generally prohibited from reaching the merits of a case.  *See Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 92-103 (1998).  It is also true, however, that federal courts may impose sanctions for abuse of the judicial process even in the absence of subject matter jurisdiction.  *See Willy v. Coastal Corp.*, 503 U.S. 131, 138-39 (1992); *Ratliff v. Stewart*, 508 F.3d 225, 231 & n.7 (5th Cir. 2007); *cf. United States v. Hudson*, 11 U.S. 32, 34 (1812) (recognizing the federal courts' inherent power to "fine for contempt--imprison for contumacy--inforce the observance of order").

It is an open question in this circuit whether a court without subject matter jurisdiction may dismiss a case with prejudice for failure to prosecute or for failure to comply with a court's orders.  Recent Supreme Court decisions point in conflicting directions.  On the one hand, Federal Rule of Civil Procedure 41(b) specifies that dismissals under its provisions "operate[] as an adjudication on the merits," FED. R. CIV. P. 41(b), which is similar to the language used by the Supreme Court to refer to issues that may not be decided in the absence of subject matter jurisdiction.  *See, e.g., Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430-31

(2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("[S]ubject-matter jurisdiction necessarily precedes a ruling on the merits."). On the other hand, a dismissal for failure to prosecute or for failure to comply with a court's orders does not require the court "to pronounce upon the meaning or the constitutionality of a state or federal law," *Steel Co.*, 523 U.S. at 101-02; *see also Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 503, 506 (2001) (observing that the reference to dismissals "on the merits" in Rule 41(b) does not mean that the dismissing court has "pass[ed] upon the substantive merits of a claim"), and thus does not implicate the separation of powers and federalism concerns that animate the usual rule requiring subject matter jurisdiction. *See Steel Co.*, 523 U.S. at 101; *see also Ruhrgas*, 526 U.S. at 584-85 ("[A] court that dismisses on ... non-merits grounds ... before finding subject-matter jurisdiction, makes no assumption of law-declaring power that violates the separation of powers principles underlying *Mansfield* [*v. Swan*, 111 U.S. 379 (1884),] and *Steel Company*.") (quoting *In re Papandreou*, 139 F.3d 247, 255 (D.C. Cir. 1998)).

The question is a difficult one that has divided the courts of appeals. *Compare In re Exxon Valdez*, 102 F.3d 429, 431 (9th Cir. 1996) (approving a dismissal with prejudice in the absence

of subject matter jurisdiction), *and Caribbean Broadcasting System, Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1091 (D.C. Cir. 1998) (approving the practice in dicta), *with Hernandez v. Conriv Realty Assoc.*, 182 F.3d 121, 124 (2d Cir. 1999) (disapproving the practice), *and In re Orthopedic "Bone Screw" Products Liability Litigation*, 132 F.3d 152, 156-57 (3d Cir. 1997) (same). In this case, however, the Court need not resolve it. As discussed below, the amount in controversy is clearly met. The Court therefore has both subject matter jurisdiction and the power to dismiss with prejudice.

## III. MOTION TO REMAND

### A. Legal Standard

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action. *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 34 (2002); 28 U.S.C. § 1441(a). "The removing party bears the burden of establishing that federal jurisdiction exists." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). To assess whether jurisdiction is appropriate, the Court considers "the claims in the state court petition as they existed at the time of removal." *Manguno v. Prudential Property & Casualty Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "Any

ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Id.* Although the Court must remand the case to state court if at any time before final judgment it appears that it lacks subject matter jurisdiction, the court's jurisdiction is fixed as of the time of removal. *See* 28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996); *Cavallini*, 44 F.3d at 264.

Lexington has asserted federal jurisdiction based on diversity of citizenship. *See* 28 U.S.C. § 1332. Diversity jurisdiction exists only when the parties are citizens of different states and the amount in controversy exceeds $75,000. *White v. FCI USA, Inc.*, 319 F.3d 672, 674 (5th Cir. 2003). Because the parties agree that they are citizens of different states, the Court need only consider whether the amount in controversy is met.

When a plaintiff seeks an unspecified amount of damages, the Fifth Circuit requires the removing defendant to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See Simon v. Wal-Mart Stores*, 193 F.3d 848, 850 (5th Cir. 1999); *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995); *De Aguilar*, 47 F.3d at 1412. A defendant can satisfy this burden in two ways: (1) by showing that it is facially apparent that the plaintiff's claims exceed the

jurisdictional amount or (2) by setting forth the facts in dispute supporting a finding that the jurisdictional amount is satisfied. *Allen*, 63 F.3d at 1335. The defendant must do more than point to a state law that may allow plaintiff to recover more than the jurisdictional minimum; the defendant must submit evidence that establishes that the actual amount in controversy exceeds $75,000. *See De Aguilar*, 47 F.3d at 1412. Where the facially apparent test is not met, it is appropriate for the Court to consider summary-judgment-type evidence relevant to the amount in controversy as of the time of removal. *Allen*, 63 F.3d at 1336. To prevent removal, once defendant had carried his burden of proof, the plaintiff must show to a legal certainty that the recovery will not exceed the jurisdictional amount. *De Aguilar*, 47 F.3d at 1412.

### B. Discussion

Plaintiff's argument in favor of remand is simple: "Pursuant to discovery and consultation with Plaintiffs it is clear that the amount in controversy is and has never been in excess of the jurisdictional limit of $75,000; and the undersigned counsel is authorized to and does stipulate to the fact that the amount in dispute is not in excess of $75,000." R. Doc. 18-5 at 1-2. In support the latter proposition, plaintiff's counsel has attached a "Binding Stipulation as to Amount in Controversy" in which he

certifies that the "total damages sought by Plaintiff in this cause of action do not exceed $75,000" and that "neither Plaintiff nor her attorney will accept a judgment in an amount that exceeds $75,000." R. Doc. 18-2 at 1-2. Plaintiff did not sign the document.

To establish federal jurisdiction, the Court must first look to the state court petition. *See Manguno*, 276 F.3d at 723. Plaintiff alleged that covered perils "severely damaged, destroyed or otherwise rendered uninhabitable" the covered dwelling. Butler Compl., Civ. No. 07-7384, R. Doc. 1-3 at ¶ 5. Specifically, she alleged that:

- a) A large portion of the roofs were badly damaged;
- b) Some of the felt and sheathing on the roofs were badly damaged and/or blown away;
- c) Some turbine roof vents were blown away;
- d) Several windows were blown out; and
- e) Numerous storm-related penetrations through the structure's otherwise waterproof "skin" allowed wind-driven rain to saturate the insulation, drywall, and paint finishes of the interior of the dwelling, together with its contents.

*Id.* ¶ 7. As noted, plaintiff also asserted claims for additional living expenses, loss of use, damage to other covered structures, attorneys fees, and bad faith penalties. *Id.* at ¶ 29.

Pursuant to Louisiana law, the petition did not pray for a specific amount of damages. *See* LA. CODE CIV. P. art. 893(A)(1) ("No specific monetary amount of damages shall be included in the

allegations or prayer for relief of any original, amended, or incidental demand."). The only reference in the petition to the amount in controversy is the statement that "Plaintiffs do not believe that their damages will exceed $70,000," Butler Compl., Civ. No. 07-7384, R. Doc. 1-3 at ¶ 29, which appears calculated solely to defeat diversity jurisdiction without binding the plaintiff to any particular sum, *see* LA. CODE CIV. P. art. 862 (relief not limited to amount demanded in pleadings). The Court therefore declines to credit the statement. *Cf. Manguno*, 276 F.3d at 724 ("This Court has expressed its concern about the possibility of 'abusive manipulation by plaintiffs, who may plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading.'") (quoting *De Aguilar*, 47 F.3d at 1410). Even after disregarding the $70,000 figure, however, the Court cannot say that it is apparent from face of the petition that the plaintiff's claims exceed the jurisdictional amount. The allegations are simply too general to satisfy the Court that more than $75,000 is in controversy.

Nevertheless, Lexington may defeat the Motion to Remand by using summary judgment-type evidence to establish the amount in controversy by a preponderance of the evidence. *See Grant v. Chevron Phillips Chemical Co.*, 309 F.3d 864, 868 (5th Cir. 2002).

Here, Lexington has shown that plaintiff had over $180,000 in total coverage, including $100,000 for the dwelling, $50,000 for contents, $10,000 for other structures, and $20,000 for additional living expenses. *See* Policy Declarations, Civ. No. 07-7384, R. Doc. 1-3 at 14; *see also* R. Doc. 19 at 6 n.3. As described above, plaintiff alleged that covered perils "severely damaged, destroyed or otherwise rendered uninhabitable" the dwelling. Butler Compl., Civ. No. 07-7384, R. Doc. 1-3 at ¶ 5. "Such allegations obviously suggest very substantial repair/replacement costs," which leads the Court to conclude that a large amount of money was in controversy at the time of removal. *Stoutz v. Lexington Ins. Co.*, 2008 WL 1930545 at *3 (E.D. La. 2008). In addition, as Lexington points out, plaintiff's incomplete answers to the interrogatories indicate that the amount in controversy was well in excess of $75,000. In those answers, plaintiff claimed to be owed $68,000 for uncompensated repairs the property, $40,000 in lost contents, and $2,700 in additional living expenses. *See* R. Doc. 19-2 at 13-14. When those numbers are combined with the prayer for attorneys fees and bad faith penalties, *see Manguno*, 276 F.3d at 723-24, it is clear that Lexington has met its burden of establishing the amount in controversy by a preponderance of the evidence.

In order to prevail on her motion to remand, plaintiff must now "prove to a legal certainty that her recovery will fall below

13

$75,000." *Manguno*, 276 F.3d at 724. Plaintiff's only argument on this score relates to the "Binding Stipulation" signed by her attorney. *See* R. Doc. 18-5 at 1. Plaintiff apparently believes that by authorizing her attorney to certify fourteen months after removal that "[n]either plaintiff nor her attorney will accept a judgment in an amount that exceeds $75,000," R. Doc. 18-2 at 2, she can defeat federal jurisdiction. That is manifestly not the case: "[l]itigants who want to prevent removal must file a binding stipulation or affidavit *with their complaints*; once a defendant has removed the case, [Supreme Court precedent] makes later filings irrelevant." *De Aguilar*, 47 F.3d at 1412 (quoting *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) (per curiam)) (emphasis added). Counsel's "Binding Stipulation" therefore cannot aid plaintiff at this late hour.

For all of the foregoing reasons, the Court finds that it has subject matter jurisdiction over plaintiff's claims. Plaintiff's Motion to Remand must therefore be denied.

### III. MAGISTRATE'S REPORT AND RECOMMENDATION

The Court now turns to the magistrate judge's Report and Recommendation, which recommended that plaintiff's claims be dismissed with prejudice for failure to prosecute and for failure to comply with the Court's orders. Because dismissal is a dispositive matter, the Court reviews an objected-to magistrate's

report *de novo*. FED. R. CIV. P. 72(b)(3).

Dismissal with prejudice "is an extreme sanction that deprives the litigant of the opportunity to pursue his claim." *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992). The Fifth Circuit has held that dismissals with prejudice for failure to prosecute are permissible only when: "(1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) the district court has expressly determined that lesser sanctions would not prompt diligent prosecution, or the record shows that the district court employed lesser sanctions that proved to be futile." *Tello v. C.I.R.*, 410 F.3d 743, 744 (5th Cir. 2005) (quoting *Berry*, 975 F.2d at 1191). In addition, at least one of the following three aggravating factors must usually be present: "(1) delay caused by the plaintiff himself; (2) actual prejudice to the defendant; or (3) delay as a result of intentional conduct." *Id.*

The magistrate judge found, and this Court expressly affirms, that there is a clear record of delay and contumacious conduct by the plaintiff in this case and that lesser sanctions have not prompted diligent prosecution or compliance with the Court's orders. The magistrate judge issued three separate orders, each warning the plaintiff that failure to comply would result in incrementally more severe sanctions. The plaintiff failed to comply with all three. When it became apparent that

15

the magistrate was going to recommend dismissal, plaintiff responded by filing a frivolous motion to remand instead of correcting her behavior. Even after the magistrate judge had recommended dismissal and expressly warned plaintiff to "comply with the requirements of the Court's scheduling and discovery orders," R. Doc. 27 at 6, plaintiff failed to comply with the deadline for filing witness and exhibit lists. *See* R. Doc. 33.

Moreover, as the magistrate found, at least two of the three aggravating factors are present. The plaintiff's failure to explain the delays in this case and her repeated disregard for the Court's orders suggest a level of culpability beyond mere negligence. If there is some benign explanation for these events, the plaintiff has not presented it. And when the plaintiff's attempt to avoid sanction by filing a frivolous remand motion and more recent failure to comply with the scheduling order deadlines are taken into account, the facts point to the inescapable conclusion that the delay in this case was the result of intentional conduct. It is also clear that Lexington has been prejudiced by the delay. Over a year and a half has passed since the action was filed, yet Lexington still does not have access to the evidence that forms the basis of plaintiff's claims. The company's time has been wasted and its ability to defend against the lawsuit has been compromised by the growing remoteness of the underlying events.

The Court notes that fault for these deficiencies may lie partially with plaintiff's counsel, Harry E. Cantrell, Jr. When the Court ordered plaintiff to explain her failure to comply with the deadline for filing witness and exhibit lists, Mr. Cantrell accepted responsibility for the delay. *See* R. Doc. 38. He pointed out that he is "basically a solo practitioner with a very small staff" and admitted that he is "not the most computer-literate attorney and [that] the risk of missing a document in the electronic filing system is highly probable." *Id.* The Court also notes that it has had to sanction several of Mr. Cantrell's other clients on recent occasions. *See, e.g.*, *Quintero v. Balboa Ins. Co.*, 2009 WL 382506 (E.D. La. 2009); *Davis v. Auto Club Family Ins. Co.*, 2008 WL 5110619 (E.D. La. 2008). While it is impossible to tell who was at fault in those cases, the pattern suggests that Mr. Cantrell may have been at least partially to blame. Indeed, Mr. Cantrell was directly sanctioned in one case for "completely ignor[ing] his obligation to comply with the Federal Rules of Civil Procedure and the Local Rules of [the] Court and to prepare [the] case for trial." *Second Highway Baptist Church v. State Farm Ins. Co.*, 2009 WL 424401 (E.D. La. 2009).

In any case, dismissal under Rule 41(b) may be appropriate even when counsel contributes to the delay. As the Fifth Circuit has explained, "a party is bound by the acts of his attorney,"

and attorney conduct is sufficient to trigger the intentional delay and prejudice aggravating factors. *Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 419 (5th Cir. 2006). Here, dismissal with prejudice is warranted because: (1) there is a clear record of delay and contumacious conduct, (2) it is plain that the delay is both intentional and prejudicial, and (3) the Court's has unsuccessfully attempted to correct the behavior through lesser sanctions. For these reasons, the Court adopts the magistrate's recommendation.

**IV. CONCLUSION**

For the foregoing reasons, plaintiff's motion to remand is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

IT IS ORDERED that plaintiff's counsel shall certify to the Court no later than Friday, March 27, 2009 that he has provided plaintiff with a copy of this Order and Reasons.

New Orleans, Louisiana, this __18th__ day of March, 2009.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE